UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ESTATE OF KENNETH DALSTRA BY
PERSONAL REPRESENTATIVE DEBRA SCHERBINSKI,

      Plaintiff,                              Case No. 1:15-cv-00474-RHB
-vs-                                         HON. ROBERT HOLMES BELL

CORRECTIONS OFFICER PALMER,
CORRECTIONS OFFICER SUMMERS,
UNKNOWN CORRECTION OFFICERS,
LIEUTENANT MCDONALD,
JAQUELINE WILLIAMS, C.O. PINK, C.O. JOHNSON,
C.O. GRIGGITH, NURSE CASTOR, C.O. FENNER,
C.O. GEE, NURSE GRAHAM, and
BUDDY REED.

      Defendants.
_____/

**JOHN T. ALEXANDER** (P43789)
Alexander & Angelas, P.C.
Attorneys for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, Michigan 48025-4506
(248) 290-5600
john@alexanderandangelas.com

**JOHN L. THURBER** (P44989)
Attorney for Defendants
Michigan Department of Attorney General
Civil Litigation, Employment &
Elections Division
P.O. Box 30217
Lansing, Michigan 48909
(517) 335-7021
thurberj@michigan.gov

**JOSEPH T. FROCHLICH** (P71887)
Attorney for Defendants
Michigan Department Attorney General
G. Mennen Williams Bldg.
525 W Ottawa Street
P.O. Box 30736
Lansing, Michigan 48909
(517) 373-6434
froehlichj@michigan.gov

_____/

**FIRST AMENDED COMPLAINT**
**DEMAND FOR TRIAL BY JURY**

NOW COMES the above-named Plaintiff, Debra Scherbinski, As Personal Representative to the Estate of Kenneth Dalstra, by and through her attorneys, Law Offices of Alexander & Angelas, P.C., hereby complains against the above named Defendants as follows:

1. That Plaintiff's Decedent resided in the County of Ionia, State of Michigan.

2. That Defendants, each of them, conduct business at Richard A. Handlon Correctional Facility, County of Ionia, State of Michigan.

3. That this cause of action arose at the Richard A. Handlon Correctional Facility, County of Ionia, State of Michigan.

4. That the amount in controversy is in excess of Seventy-Five Thousand, ($75,000.00) Dollars.

## **GENERAL ALLEGATIONS**

5. That on or about November 5, 2013, Plaintiff's Decedent became a prisoner in the Michigan Department of Corrections system.

6. That Plaintiff's Decedent suffered from schizophrenia and medications were changed.

7. That Plaintiff's Decedent was transferred to the Richard A. Handlon Correctional Facility.

8. That on or about April 5, 2014, Plaintiff's Decedent was spraying soap in his eyes to wash out demons.

9. That on or about April 5, 2014, Plaintiff's Decedent was visited by his mother, who informed Defendant Lieutenant McDonald that Plaintiff's Decedent is in need of medical attention because of, including but not limited to; seizure activity, full blown schizophrenia and devoid of mental stability.

10. That Defendant Lieutenant McDonald indicated that he would put in a kite Monday, April 7th, two days into the future.

11. That Defendant Lieutenant McDonald further indicated that no one was available on the weekend to decide if Plaintiff's Decedent should seek medical attention.

12. That on or about April 6, 2014, Plaintiff's Decedent was witnessed by Defendant Corrections Officer Palmer to be drinking excessive amounts of water.

13. That Defendant Corrections Officer Palmer gives Plaintiff's Decedent a direct order to stop drinking but Plaintiff's Decedent ignores her.

14. That Defendant Corrections Officer Palmer turns off Plaintiff's Decedent's water and contacts a psychologist.

15. That Plaintiff's Decedent was seen by psychologist Williams and put on suicide watch.

16. That on or about April 6, 2014, psychologist Williams notes that Plaintiff's Decedent's behavior is becoming more bizarre and reports placing fecal matter in his eyes, and that Dalstra drank water non-stop: she was further aware that Dalstra's water had been shut off due to health concerns but was turned back on.

17. Williams was aware that drinking lots of water poses a suicide risk but did not put any warnings in the management plan nor did she contact healthcare.

18. That Dalstra did not move or speak during Williams' visit.

19. Graham observed Dalstra's head being continuously face down in the sink drinking water and was further aware that drinking lots of water can cause medical problems.

20. That Plaintiff's Decedent's reasoning, impulse control, and judgment were noted to be very poor.

21. That a management plan was written to prevent further self-injury.

22. That Defendant Corrections Officer Palmer turned Plaintiff's Decedent's water back on.

23. That Defendant Corrections Officer Palmer advised the next shift about Plaintiff's Decedent drinking water excessively.

24. That on or about April 7, 2014, R.N. Graham interviewed Plaintiff's Decedent as she was informed that Plaintiff's Decedent was excessively drinking water all night.

25. That R.N. Graham noted Plaintiff's Decedent's face and head were bent down under the faucet and eye contact was not made. Graham observed Dalstra's head being continuously face down in the sink drinking water and was further aware that drinking lots of water can cause medical problems.

26. That Plaintiff's Decedent would not speak, and was noted to have poor impulse control and judgment.

27. That a plan for behavioral health segregation monitoring was noted.

28. That later that day psychologist Williams noted suicide risk to be moderate.

29. That psychologist Williams also noted that Plaintiff's Decedent's behavior was becoming increasingly bizarre and disruptive.

30. That a management plan included suicide observation and any items or substances should be removed to prevent self-injurious behavior, and that Plaintiff's Decedent should be observed every fifteen minutes.

31. That the shift sergeant was made aware that Plaintiff's Decedent's status was high due to his mental health diagnoses.

32. Griffith was aware that Dalstra spent the whole shift bending over a drinking fountain not saying anything to anybody and that he knew that he was drinking a ton of water.

33. Griffith wanted Dalstra to stop drinking so he would not hurt himself and was aware that his water was shut off for a short time, Griffith did not contact the Health Care Unit nor any other medical provider.

34. Between April 7, 2014 and April 8, 2014 video depicted Dalstra vomiting approximately 20 times.

35. That Plaintiff's Decedent's behavior included taking off his clothes becoming naked, vomiting, urinating, and defecating on himself during the night hours of April 7th to the morning hours of April 8, 2014.

36. That it was noted that Plaintiff's Decedent's cell was covered in liquid.

37. That through the night hours of April 7, 2014 to the morning hours of April 8, 2014, Plaintiff's Decedent was observed drinking excess amounts of water.

38. Johnson observed Dalstra spitting up water on the cell floor and throwing up. Johnson contacted Lt. Nevills and asked about a water restriction, but Johnson assumed Lt. Nevills was going to contact Health Care, which he did not.  Johnson never followed up nor contacted Health Care herself.

39. That in the early morning hours of April 8, 2014 between 4:00 a.m. and 6:00 a.m., Plaintiff's Decedent drank water non-stop and vomited.

40. Nurse Castor observed Dalstra and noted he was acutely psychotic, lots of fluid on his floor, but failed to contact Health Care or any other medical provider.

41. Buddy Reed observed Dalstra drinking excessive amounts of water and further observed Dalstra yelling "burn, burn" while face down into the sink.

42. Reed wanted to shut off Dalstra's water but he did not know how to do it and further failed to contact neither the Health Care unit nor any other medical provider.

43. That approximately 6:02 a.m., Defendant Corrections Officer Palmer started her shift and is informed by Defendant Corrections Officer Summers that Plaintiff's Decedent had been drinking water all night and throwing up.

44. That approximately 6:22 a.m. on April 8, 2014, R.N. Castor visits Plaintiff's Decedent's cell and observes him to be on his mattress with no clothing on, floor covered in urine and feces on the mattress.

45. That she further notes Plaintiff's Decedent refusing meals and being non-verbal.

46. That at approximately 6:30 a.m., Plaintiff's Decedent was discovered unresponsive and drool coming down his chin.

47. That at approximately 7:10 a.m., Plaintiff's Decedent is pronounced dead by paramedics.

48. That cause of death was determined to be water intoxication due to psychogenic polydipsia.

## COUNT I

## 42 U.S.C. 1983

49. Plaintiff realleges and incorporates by reference herein paragraphs 1 through 48 above as though more fully set forth herein.

50. That the Defendants, each of them, at all relevant times hereto, were acting under color of law.

51. That Plaintiff's Decedent had a constitutional right under the Eighth Amendment to be free from cruel and unusual punishment.

52. That Plaintiff's Decedent, as an incarcerated person, is additionally entitled to confinement under humane conditions which provide for their basic human needs.

53. That Defendants were well aware that Plaintiff's Decedent faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

54. That said Defendants acted with a deliberate indifference to Plaintiff's Decedent's health and safety.

55. That furthermore, the Defendants act was a deliberate indifference to a serious medical need exhibited by Plaintiff's Decedent and recklessly disregarded that risk.

## DAMAGES

56. That as a proximate result of Plaintiff's Decedent's violation of his constitutional rights, the following damages are requested:

   a. Conscious pain and suffering;

   b. Loss of consortium to Plaintiff's Decedent's family members;

   c. Attorneys fee; and,

   d. Punitive damages.

WHEREFORE, Plaintiff respectfully requests this Honorable Court grant judgment in her favor and against the Defendants, each of them, in amount excess of Seventy-Five Thousand ($75,000.00) Dollars exclusive of interest, costs, attorney fees and punitive damages.

>Law Offices of
>ALEXANDER & ANGELAS, P.C.
>
>By: /s/ John T. Alexander
>     JOHN T. ALEXANDER (P43789)
>     Attorney for Plaintiff
>     30200 Telegraph Road, Suite 400
>     Bingham Farms, MI 48025
>     (248) 290-5600
>     john@alexanderandangelas.com

DATED: December 21, 2015

## JURY DEMAND

  NOW COMES the above named Plaintiff, Debra Scherbinski, as Personal Representative to the Estate of Kenneth Dalstra, by and through her attorneys, Law Offices of Alexander and Angelas, P.C., and hereby demands a trial by jury.

            Law Offices of
            ALEXANDER & ANGELAS, P.C.


           By: /s/ John T. Alexander
            JOHN T. ALEXANDER (P43789)
            Attorney for Plaintiff
            30200 Telegraph Road, Suite 400
            Bingham Farms, MI 48025
            (248) 290-5600
            john@alexanderandangelas.com

DATED:  December 21, 2015